T.C. Summary Opinion 2009-160

UNITED STATES TAX COURT

FRANCIS J. AND ANDREA P. BOGUS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14809-07S.            Filed October 19, 2009.

Francis J. Bogus, pro se.

Charles Maurer, Jr., for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code in effect for

the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On their joint Federal income tax returns for 2003 and 2004 petitioners reported on Schedule C, Profit or Loss From Business, gross receipts of $44,383 and $31,027, respectively, and total expenses of $121,981 and $116,319, respectively, resulting in losses for 2003 and 2004 of $77,598 and $85,292, respectively. In the notice of deficiency respondent disallowed losses in excess of gross receipts as passive losses in both years. Respondent determined a deficiency in petitioners' Federal income taxes of $14,342 for 2003 and $16,577 for 2004. The sole issue for decision is whether the passive loss rules of section 469 preclude petitioners from deducting losses incurred from their dog racing activity.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Massachusetts when the petition was filed.

During 2003 and 2004 Francis J. Bogus (petitioner) was employed by Verizon as a network technician and typically worked 4 or 5 days per week from 7:30 a.m. to 4:30 p.m. Petitioner worked approximately 40 years for Verizon and was retired at the time of trial.

Petitioner developed an interest in greyhounds approximately 25 years ago. Petitioner was introduced to greyhounds by a friend who also lived in Massachusetts. His friend imported greyhounds from Ireland for resale. Petitioner initially purchased two trained greyhounds from his friend. Petitioner then bred these dogs and contracted with professionals to race them at a dog track in Rhode Island. By 2003 petitioner owned approximately 164 greyhounds, worth an estimated $300,000, all registered with the National Greyhound Association. Petitioner owned greyhound puppies in Oklahoma and Florida and full-grown greyhounds at approximately 10 different racetracks in multiple States.

From birth to 12 months of age the greyhound puppies were in the care of farmers who raised them. Petitioner personally visited a farm in Florida to check on his puppies on only one occasion and then only because he was taking his children to nearby Disney World. Petitioner maintained contact with the farmers by telephone.

From 12 to 16 months of age the greyhounds were in the care of trainers who boarded them and trained them to race. The trainers would call petitioner to report how the dogs were progressing. Petitioner would then determine whether to race a dog and where the dog should be raced.

From 16 months to 5 years of age petitioner's greyhounds raced at one or more tracks.  Petitioner contracted with individuals at a number of dog tracks to race his dogs.  During the years that a dog was being raced the dog would be cared for by the individual who was racing the dog.  Each greyhound would be assigned a grade, depending on how well it raced.  The best grade was AA.  When one of petitioner's dogs won a race, petitioner would receive money, the amount of which was determined by the grade of the dog and the track where the dog raced.  Some race tracks paid better than others.  At 5 years of age the greyhounds would be put up for adoption as pets.

Petitioner contracted with professionals to raise, breed, board, train, ship, and race his dogs.  In addition to handling contract arrangements, petitioner performed some additional functions.  Petitioner went to dog tracks 3 or 4 nights a week for 2 or 3 hours to watch his dogs race live and monitor them for injuries.  Most of the time petitioner went to Wonderland Greyhound Park in Revere, Massachusetts, which is about a 5-minute drive from petitioner's residence.  From there petitioner could also watch his dogs race at tracks all over the country by simulcast.

Petitioner purportedly spent 1 hour per day on bookkeeping and administration and 2 or 3 hours a week talking to contractors by telephone.  Additionally, when one of petitioner's female

greyhounds would go into heat, he would be notified by telephone and then would select an appropriate stud from an official breeding publication. Petitioner purportedly spent 3 to 5 hours per month reading professional publications and 5 to 10 minutes per telephone call related to breeding. The record is silent as to how many of these phone calls took place. Petitioner did not keep an appointment book, calendar, or diary that would constitute a narrative summary of his participation in any facet of his activity.

Petitioner did not breed, raise, board, train, ship, or race his dogs personally. Virtually all of the required services were performed by other individuals under contract. Further, petitioner did not own any of the facilities where the services were performed. At trial petitioner presented phone bills showing hundreds of telephone calls to out-of-State locations. Also, petitioner offered into evidence numerous invoices from service providers as well as earnings statements from numerous dog tracks.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner

regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Petitioner does not argue that he satisfied the elements for a burden shift, but even if he did advance this argument, petitioner did not produce sufficient evidence to support a burden shift. Accordingly, the burden remains on petitioner to disprove respondent's determinations for 2003 and 2004.

The passive loss rules of section 469 place limitations on the deduction of losses relating to passive activities; namely, from activities in which a taxpayer does not materially participate. Sec. 469(a)(1) and (2), (c)(1), (d)(1). As a general rule, a taxpayer will be regarded as not materially participating in an activity if the taxpayer is not involved in the operation of the activity on a basis which is regular, continuous, and substantial. See sec. 469(h)(1); sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

The temporary regulations under section 469 contain seven tests, the qualification under any one of which will result in a taxpayer's being treated as materially participating in the activity. Sec. 1.469-5T(a), Temporary Income Tax Regs., supra. Of the seven tests, petitioner presented evidence and made general arguments that are applicable only to the tests found in

section 1.469-5T(a)(1) and (7), Temporary Income Tax Regs., supra, which provide that a taxpayer shall be treated as materially participating in an activity if he participates in the activity for more than 500 hours during such year, or if, on the basis of all the facts and circumstances, the taxpayer participates in the activity on a regular, continuous, and substantial basis during the taxable year.

A taxpayer may establish the extent of his or her participation in a particular activity by any reasonable means and has the burden of proving material participation in the activity. Rule 142(a); sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). The method of proof, set out in section 1.469-5T(f)(4), Temporary Income Tax Regs., supra, is quite lenient, letting taxpayers prove their time spent by "any reasonable means." Reasonable means are not limited to "Contemporaneous daily time reports, logs, or similar documents" but include "the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Id.; see Mowafi v. Commissioner, T.C. Memo. 2001-111. But despite its apparent leniency, this section of the regulations does not require us to believe a "ballpark guesstimate" of the time spent on different activities. Lee v. Commissioner, T.C. Memo. 2006-193; Bailey v.

Commissioner, T.C. Memo. 2001-296; Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Petitioner alleges that he materially participated in his dog racing activity by: (1) Going to dog tracks and watching his dogs race while monitoring them for injuries for a minimum of 312 and a maximum of 624 hours per year; (2) performing bookkeeping and administrative functions for 365 hours per year; (3) talking to contractors on the telephone for a minimum of 104 and a maximum of 156 hours per year; and (4) spending a minimum of 36 and a maximum of 60 hours per year reading breeding publications such as those published by the Massachusetts Greyhound Association. Therefore, in total, petitioner alleges that he participated in this activity for a minimum of 817 and a maximum of 1,205 hours per year.

Petitioner attempts to come within the provisions of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra, by relying on his own testimony and exhibits such as invoices for services rendered by the National Greyhound Association and other service providers, earnings reports from numerous dog tracks, and telephone bills. Petitioner's vague time estimates and supporting documentation do not constitute a "narrative summary" of petitioner's participation in this activity. Further, petitioner failed to call any witnesses who could corroborate his

testimony regarding the number of hours he estimated he spent participating in the activity.

As previously noted, petitioner did not keep a diary, appointment book, calendar, or any other similar type of record of his participation in the activity. We are left with petitioner's self-serving testimony and exhibits that, when viewed in the most favorable light, fail to prove that petitioner materially participated in this activity and, when viewed in the least favorable light, support respondent's position that this is a passive activity. "The Court is not bound to accept the unverified, undocumented testimony of taxpayers, and we decline to do so in the instant case." Carlstedt v. Commissioner, supra (citing Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976)).

We believe that petitioner was regularly involved in his activity for profit but, unfortunately, was unable to demonstrate and corroborate his material and substantial participation. Petitioner could have maintained a calendar, appointment book, diary, or other record of his participation in the activity to enable him to meet his burden of proof. Lastly, we believe that having been engaged in greyhound dog racing for over 25 years, petitioner has found trustworthy and experienced individuals to breed, raise, board, train, and race his greyhounds. It would follow that this would require less material participation by

petitioner than if he were just starting the activity and learning how to operate the business.  Therefore, on the basis of the entire record, we hold that petitioner has not met his burden of proving that he has materially and substantially participated in the activity in question, and respondent's determinations are sustained.

To reflect the foregoing,

Decision will be entered for respondent.